960 F.2d 149
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joseph M. HAYES, Plaintiff-Appellant,
v.
Vincent M. RUSSO, et al., Defendants-Appellees.
 No. 91-3722.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1992.
 
 Before BATCHELDER, Circuit Judge, LIVELY, Senior Circuit Judge, and TAYLOR, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff appeals the District Court's Judgment for Defendants in this action, filed pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C.S. §§ 2000e, et seq.) for an alleged racially discriminatory and retaliatory failure to promote. For the reasons outlined below, we affirm.
 
 
 2
 Hayes, a federal employee, was hired at the United States Department of Defense Electronic Supply Center in Dayton, Ohio (the Agency) in 1961, promoted to level GS-11 in 1967, and has remained at that level. He had applied both for promotions and for a lateral transfer before the events here in question, but the record fails to reveal the specifics of those events, or the outcome of his previous charge of race discrimination against a Major Turchick for denying him the transfer.
 
 
 3
 In December of 1983, in response to a posting for applicants for two new positions at the GS-12 level in a newly created branch of the agency which was to be directed by Major Turchick and entitled the "Competition Advocate Branch", Plaintiff made application for the promotion here in dispute. The two positions offered, according to the job description, would entail outreach to local manufacturers and other potential suppliers to determine their interest in providing presently sole-sourced supplies, in an apparent effort to diversify the sources of supplies and equipment to the United States Department of Defense in Dayton, Ohio. The position description emphasized, as the District Court correctly found, extensive interaction with the client group of potential new defense equipment manufacturers and suppliers in the area, as well as with purchasing personnel at the agency, to encourage the diversification which would enhance competition and in turn result in economies in Defense Department purchasing.
 
 
 4
 Eleven persons applied for the two openings for the posted positions and were certified as minimally qualified by the Personnel Branch to the appointing official, Major Turchick. Because Mr. Hayes was among the candidates and had previously accused him of a racially discriminatory refusal to promote, the Major assigned Mr. Albert Mayhew, his Deputy Director, to conduct the selection process. The record is silent as to any discriminatory or retaliatory animus on Mr. Mayhew's part, and the magistrate who heard this case did not err in finding there was none, in light of the elaborate efforts Mr. Mayhew made to provide a fair field upon which these candidates would compete.
 
 
 5
 Mr. Mayhew first created a three-person interview panel to advise in the selection. In accord with standard practice the panel was comprised of persons at least at the Grade 12 level of the position being filled, and included a Black and a female, because the candidates included those minorities. Mr. Mayhew also composed seven job-related questions, to be asked each of the candidates by the same panel members, and provided the panel with "ideal" answers. The panel considered poise, confidence, and each candidate's manner of presentation because each of those elements was essential, according to the witnesses, to successful performance of the job. After the interviews, Mr. Mayhew eliminated every candidate not ranked among the top five by every panel member, thereby narrowing the candidates to four, and at this point Mr. Hayes was dropped from the competition. Much argument is presented concerning more favorable treatment of candidates in the competition past this point, but it was here that Plaintiff was eliminated. He was never among those four who reached individual consideration by Mr. Mayhew or final consideration by the Major. Moreover, Plaintiff's supervisor, who was one of the three interview panel members, later testified that she had only included him among her top five in the hope that he would perform better in a new department other than hers.
 
 
 6
 When two other candidates, a white male and white female, were appointed, Mr. Hayes filed a complaint with EEOC which was dismissed with a finding of a no discrimination, and was followed by his complaint in the District Court.
 
 
 7
 After trial, Magistrate Judge Michael Merz recommended Mr. Hayes' case be dismissed with prejudice, initially and upon reconsideration. District Judge Walter Rice reviewed the entire record and, finding no error, adopted the Reports and Recommendations of Magistrate Judge Merz.
 
 
 8
 Fact findings of a District Court are reviewed under a clearly erroneous standard, and will be set aside only if the reviewing court is left with the definite and firm conviction that a mistake has been committed. Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 573 (1985).
 
 
 9
 The employee Plaintiff in a Title VII lawsuit has the initial burden of presenting a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). The agency admitted at trial that Mr. Hayes had established a prima facie case of discrimination as he is a member of a protected group; he was among the eleven persons certified as minimally qualified for the job; he was not selected for the job, and two white applicants were.
 
 
 10
 Once the employee establishes the prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, supra; Burdine, supra. The Defense Department has done so, in this case. The evidence is overwhelming and uncontradicted that the entire selection process was designed to ascertain the most suitable two persons for the job to be performed in the new positions. Mr. Hayes was eliminated at the first stage of that process on the basis of his performance at a highly structured panel interview. There is no suggestion in the record of racial animus in the three independent scores of the panel, and neither Mr. Mayhew nor Major Turchick could have eliminated Mr. Hayes at that stage alone. The use of interviews as such has been upheld in federal appellate courts as a legitimate, non-discriminatory selection procedure. See, e.g., Holder v. City of Raleigh, 867 F.2d 823 (4th Cir.1989); Wheeler v. City of Columbus, Miss., 703 F.2d 853 (5th Cir.1983). The Agency has articulated a legitimate, non-discriminatory reason for not selecting Mr. Hayes.
 
 
 11
 Once a legitimate, non-discriminatory reason for non-selection has been articulated, the burden returns to Mr. Hayes to prove by a preponderance of the evidence that the legitimate reasons offered by the Agency were a pretext for discrimination. McDonnell Douglas, at 804. Mr. Hayes has not only failed to demonstrate that he was more qualified than the two persons eventually selected, but he has not shown that he was even more qualified than those four who were recommended by the interview panel for further consideration. The interview panel found that his qualifications were not equal to theirs.
 
 
 12
 Every panel member testified that Mr. Hayes would not have presented the desired image of the Agency to the public it hoped to reach. Mr. Hayes presented no evidence at trial, other than pure speculation, to support his contention that the qualifications uniformly recognized as necessary for the new position were used as a pretext for either discrimination or retaliation against him.
 
 
 13
 Although Mr. Hayes argues that he had greater time in grade than the ultimate appointees, there is no evidence that such a qualification would be more job-related than those chosen by the Agency. There is not a scintilla of evidence that the determinations made by either the members of the interview panel or Mr. Mayhew himself were pretextual in the slightest. We affirm the District Court's dismissal of the claim of race discrimination.
 
 
 14
 In order to establish a prima facie retaliation claim, the plaintiff must prove that he engaged in an activity protected by Title VII; that the exercise of his protected rights was known to the defendant; that the defendant took an employment action adverse to the plaintiff; and that there was a nexus between the protected activity and the adverse employment action. Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir.1987).
 
 
 15
 Mr. Hayes apparently had engaged in prior activities protected by Title VII, and had most recently complained that Major Turchick had discriminated against him on account of race. Mr. Hayes discounts the fact that Major Turchick, who was slated to head the new Branch, was not part of the selection process which eliminated him, and suggests that Major Turchick used his subordinate, Mr. Mayhew, as an instrument of retaliation. The record is barren of any such evidence, or of any suggestion that the entire panel had participated in a retaliatory act.
 
 
 16
 Mr. Hayes makes other arguments which the District Court has properly found have no support in the record.
 
 
 17
 The Judgment of the District Court is, therefore, affirmed.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation